UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D. SAVAGE, LLC, ET AL.,

      Plaintiffs,                      Case No. 21-cv-11242

           v.                      U.S. DISTRICT COURT JUDGE
                                        GERSHWIN A. DRAIN

CITY OF DETROIT, ET AL.,

      Defendants.

_____/

## OPINION AND ORDER: (1) GRANTING DEFENDANTS MOTION FOR SUMMARY JUDGMENT AS TO COUNT I; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR SUMMARY JUDGMENT AS TO COUNT II [ECF NO. 66].

### I. Introduction

On April 27, 2022, Plaintiffs filed a second amended complaint (the "complaint") [ECF No. 28]. It alleges eight counts. Counts I- IV allege various constitutional violations under 42 U.S.C § 1983:

1. **Count I:** First, Fifth, and Sixth Amendment retaliation;
2. **Count II:** Fourth Amendment Excessive Force;
3. **Count III:** Fifth and Fourteenth Amendment Conditions of Confinement (dismissed);
4. **Count IV:** Fourth Amendment Unlawful Search and Seizure.

Counts V-VIII (dismissed) allege claim and delivery, conversion, trespass, and nuisance under Michigan law. It names as Defendants the City of Detroit (dismissed), the Wayne County Sheriff's Office (dismissed), U.S. Department of

Homeland Security Officer Sean Williford (dismissed), and 15 Detroit police officers. Only Counts I, II, and IV remain.

Before the Court is Defendants' Motion for Summary Judgment [ECF No. 66] filed by 12 of the 15 Detroit police officers listed as Defendants in this case: Mohamed Barakat, Kevin Briggs, Ronald Hopp, Stephen Petroff, Kenneth Valrie, Brent Benavides, Christopher Nieman, Casey York, KiJuan Anderson, Troy Williams, Steven Riley, and Nzinga Moore (collectively hereinafter "Defendants"). The motion was filed on November 14, 2022. Officer Defendants move for summary judgment on count I (alleged retaliation claims under the First and Fifth Amendments) and count II (excessive force in violation of the Fourth amendment). [ECF No. 66, PageID.709]. Plaintiffs responded on December 5, 2022. Defendants filed a reply brief on December 19, 2022. The motion is fully briefed.

Upon review of the parties' submissions, the Court concludes oral argument will not aid in the resolution of these matters. Accordingly, the Court will resolve these motions [ECF No. 66] on the briefs. See E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, Defendants Motion for Summary Judgment is **GRANTED** as to Count I and it is **GRANTED IN PART** and **DENIED IN PART** as to Count II.

## II. Factual Background

The Plaintiffs in this case include D. Savage LLC (the "Savage Facility")—a marijuana facility that operated at 4473 W. Jefferson Ave. in Detroit—and various members of its staff: Cotea Jones, Jeanne Walsh, Jabari Currie, Curtis Williams, Travis Davison, and James Frazier.

The Savage Facility was searched pursuant to a valid warrant issued by a state court judge and supported by probable cause.   Border Patrol Agent Sean Wilford and various officers of the Detroit Police Department executed the search on May 29, 2018. When Defendants arrived, Plaintiff Cotea Jones allegedly greeted officers at the door of the facility to show them paperwork and documentation that D. Savage had obtained from the State of Michigan and City of Detroit. Plaintiffs believed that this paperwork showed that D. Savage was authorized to operate a medical marijuana facility. During this initial interaction, however, Defendant Officer Barakat placed Jones in handcuffs.

The officers entered the facility with guns drawn and encountered five other Plaintiffs at various locations in the facility. The officers saw a large quantity of marijuana plants of different sizes, watering systems, and other equipment related to growing marijuana. It is undisputed that, when the officers entered the building, Plaintiff Curtis Williams ran down the hallway of the facility and slammed the door to the lab where Plaintiff James Frazier was working. Eventually, the five

Plaintiffs inside the warehouse, Curtis Williams, James Frazier, Travis Davison, Jabari Currie, and Jeanne Walsh, were each handcuffed and were lined up against a wall inside the facility, along with Plaintiff Cotea Jones.

Plaintiff Jeanne Walsh swore in an affidavit that Officer Brent Benavides did the following: "He came up and he grabbed my arm and he said something to me. I don't remember what he said. It was blurry. All I said is our lawyer's on his way, and he smashed me into the wall, and my face hit the wall." [ECF No. 66-8, PageID.784]. Walsh also testified that her "wrists were sore from the handcuffs" with "red marks," but that she did not ask the officers at any time to take the handcuffs off or loosen them. [Id. at PageID.789].

Plaintiff Curtis Williams testified that "Officer Anderson" did the following: "Well, like my arms were both behind my back and he slammed me up against the wall. I couldn't like brace myself or stop myself. I hit my face on the wall." [ECF No. 66-9, PageID.796]. Williams also testified that he "was commenting on how tight the handcuffs were and they were cutting off the circulation of my wrists, and if they could loosen them" and Officer Anderson "said, 'No, we're not loosening them. Shut the fuck up[,]" *inter alia* [Id].

Defendants searched and confiscated marijuana operations equipment and marijuana products. [ECF No. 28, PageID.388]. On July 31, 2018, the Wayne County Prosecutor's Office proceeded with the prosecution of Plaintiffs for

criminal charges at a preliminary hearing. After the contested hearing, all of Plaintiffs' criminal charges were dismissed without prejudice. The Court quashed the criminal complaints and charges were never reinstituted by the Wayne County Prosecutor's Office.

Since the officers had a warrant and none of them participated in the formulation of probable cause, the legality of the search and arrests is not in question. Rather, all the claims in this case revolve around Defendant Officers' use of force in executing the search and making arrests. The Court will discuss the applicable law and whether the Defendant Officers retaliated against certain Plaintiffs for exercising their constitutional rights, whether any of the officers engaged in excessive force, and whether they are entitled to qualified immunity.

### III. Legal Standards

#### 1. Summary Judgment Standard

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec Indus Co, Ltd v Zenith Radio Corp*, 475 U.S. 574, 587; 106 S Ct 1348; 89 L Ed 2d 538 (1986).Viewing the facts in the light most favorable to the non-moving party, the Court must decide "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v Liberty Lobby, Inc,* 477 U.S. 242, 251–52 (1986).

## 2. Qualified Immunity Standard

Qualified immunity shields state and local officials from personal liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). In reviewing a qualified immunity defense, the Court considers: (1) whether the plaintiff has asserted a violation of a constitutional right; and (2) whether the constitutional right was so clearly established at the time in question that a reasonable official in the defendant's position would have known that he was violating the plaintiff's constitutional rights. *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). (Brackets and internal quotation marks omitted).

Courts may exercise discretion in deciding which of the two prongs to address first considering circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The relevant, dispositive inquiry in determining whether a right is clearly established is "whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he/she confronted" in the case. *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Id*. citing *Ashcroft v. al–Kidd*, 131 S.Ct. 2074, 2085 (2011) (internal quotation marks omitted). "[The Sixth Circuit] do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

The Court will discuss whether genuine issues of material fact exist that preclude summary judgment and apply the qualified immunity framework to each of Plaintiffs' claims.

## IV.    Discussion

Plaintiffs bring claims for First, Fifth, and Sixth Amendment Retaliation under 42 U.S.C. § 1983 (count I) and Fourth Amendment Excessive Force under 42 U.S.C. § 1983 (count II).  Defendants contend that the Court should dismiss Plaintiffs' remaining claims pursuant to Fed. R. Civ. P. 56 because Plaintiffs failed to demonstrate the existence of any genuine issue of material fact as to: (1) whether Plaintiffs suffered unconstitutional First and Fifth Amendment retaliation by any of the Defendants; (2) whether Plaintiffs suffered a Fourth Amendment constitutional violation for excessive force by any of the Defendants; and (3) Defendants are entitled to qualified immunity as to counts I and II.

## A. Count I: First, Fifth, and Sixth Amendment Retaliation

Section 1983 provides a remedy for constitutional violations committed by state actors. In this case, count I alleges a claim that Defendant Officers retaliated against the Plaintiffs for exercising their First and Fifth Amendment constitutional rights.

"It is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999). "As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019). Beyond this general rule, the Sixth Circuit has held that the following criteria applies in determining whether a government act constitutes unconstitutional retaliation: (1) the plaintiff was engaged in conduct protected by the Constitution or by statute, (2) the defendant took an adverse action against the plaintiff, and (3) this adverse action was taken because of the protected conduct. *Id*. In this context, an "adverse action" is one that is "capable of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

Plaintiffs claim that, in retaliation for their protected speech and exercise of their Fifth and Sixth Amendment rights, Defendants made insults, threats, and acts of violence against them. Specifically, Plaintiff Jones testified that, in response to questions posed to her while she was in custody, she responded, "my lawyer's outside. Ask my lawyer." [ECF No. 66-6, PageID.770]. She also says she attempted to show officers paperwork which purported authorized D. Savage's operations. Plaintiffs say this is protected activity under the First and Fifth Amendments and in response, officers yelled at her, cussed at her, and she was "generally dehumanized." [ECF No. 75, PageID.879].

It is unclear which officers allegedly participated in these actions, however, Defendants correctly point out that they are entitled to qualified immunity because "Plaintiffs point to no case law establishing there is unconstitutional retaliation [when] an officer is rude to or yells at a suspect or continues to conduct a search and seizure of contraband, pursuant to a warrant, while ignoring the suspect's purported paperwork or statements that nothing illegal is going on." [ECF No. 78, PageID.998]. Plaintiffs do not point to existing precedent that would have put a reasonable officer on notice that officers who yell and curse at an arrestee after an arrestee engages in protected speech or asserts a constitutional right, would constitute an "adverse action" amounting to a constitutionally cognizable

retaliation claim. Likewise, Plaintiffs cannot show that existing precedent has placed this question "beyond debate."

The Supreme Court and Sixth Circuit have recognized numerous acts by state actors as "adverse actions" for constitutional retaliation claims. *See Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (the combination harassment, physical threats, and transfer to area of prison used to house mentally disturbed inmates, and the conditions in that area of the prison would likely have a strong deterrent effect). *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010) (placing a prisoner in administrative segregation where he was likely to face bodily harm). The jurisprudence pertaining to constitutional retaliation claims makes clear that a plethora of government acts could constitute "adverse action[,]" those acts do not include merely being rude to an arrestee and executing a search despite a suspect's claims to innocence. See *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723 (2019) (arrest); *Hartman v. Moore*, 547 U.S. 250, 255 (2006) (prosecution); *Cain v. City of Detroit*, 2016 WL 6679831, at *7 (E.D. Mich. Nov. 14, 2016) ("having one's vehicle seized, and receiving a ticket, for criticizing police are adverse actions that would likely chill a person of ordinary firmness from exercising this protected right"). *See also Breathe v. City of Detroit*, 484 F. Supp. 3d 511, 518 (E.D. Mich. 2020) (Officers using tear gas, pepper spray, and batons against peaceful protestors); and *Uhrynowski v. Cnty. of Macomb*, 2009 WL 10713262, at *8 (E.D.

Mich. Sept. 30, 2009) (Plaintiff permitted to proceed with a retaliation claim against officer based on his theory that officer exercised excessive force and unlawfully seized and arrested Plaintiff after he requested officer identify himself or produce a warrant). *See also Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) ("a threat to change drug test results for an inmate would deter many people of ordinary firmness from proceeding with litigation" due to the impact it could have on future job prospects, parole, and certain privileges).

As the Sixth Circuit recognized in *Thaddeus–X*, "certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus–X*, 175 F.3d at 398. Viewing the facts in the light most favorable to Plaintiff Jones, it may have been unnecessary for the officers to yell and be rude to an allegedly compliant arrestee who refused to answer questions and asked for her lawyer. But these particular acts by the officers are ultimately inconsequential compared to the "adverse action" examples elucidated by existing precedent and case law above.

In the absence of a meaningful threat against one's person or livelihood, the deterrent effect of rude behavior directed at a compliant arrestee seeking to exercise an important constitutional right is minimal. Jones was part of a group of

six criminal suspects being arrested incident to a valid search warrant for drugs and weapons. The Court is aware of no authority clearly establishing, or putting reasonable officers under these circumstances on notice, that insults directed toward an arrestee—without threats of harm or other consequential acts—is an "adverse action". And it is not clear that such conduct could constitute retaliation when done by a police officer in response to an arrestee who utters words that are protected by the First Amendment or invokes other constitutional rights. Defendants are entitled to qualified immunity on Jones's retaliation claim.

Plaintiff Williams also asserts a constitutional retaliation claim, he testified that he was "commenting on how tight the handcuffs were and they were cutting off the circulation in [his] wrists, and if they could loosen them." [ECF No. 66-9, PageID.801]. Plaintiffs argue that this is "protected activity under the First (and arguably, Fourth) Amendment." [ECF No. 75, PageID.878]. Plaintiffs say Officer Defendant Anderson responded by yelling at Williams, cursing at him, and refusing assistance with the handcuffs that were too tight. *Id*.

Williams was cuffed and arrested before he commented about how tight the handcuffs were. He does not allege that the officer tightened the handcuffs in response to his comments. Similar to Jones, Williams's claim must fail on qualified immunity grounds. It is not clearly established that, when an officer refuses to loosen handcuffs immediately after it is requested by an arrestee, it

constitutes "adverse action" in retaliation to the exercise of protected speech or the right to be free from excessive force. Further, Plaintiffs offer no support for the proposition that merely yelling at an arrestee and refusing an arrestee's request to loosen his handcuffs would be so consequential as to deter a person of ordinary firmness from making the request at all. Both Williams's and Jones's retaliation claims fail under the "clearly established" prong of the qualified immunity analysis.

Next, Plaintiff Walsh testified that when an officer spoke to her, she responded "our lawyer's on his way." [ECF No. 66-8, PageID.784]. Plaintiffs say this is protected activity under the First and Fifth Amendments. She says Officer Brent Benavides instantly responded by smashing her into the wall face first while her hands were cuffed behind her back. [Id]. Plaintiffs say the "temporal proximity" between Walsh's speech and Benavides smashing her into the wall was "instantaneous." [ECF No. 75, PageID.879]. Notwithstanding Plaintiff's claim that Benavides smashing her into a wall constituted excessive force, which will be discussed *infra*, pushing an arrestee up against a wall—however forceful the push may have been—constitutes an action commensurate with the lawful search and arrests officers were conducting on the facility and its occupants. It is not clearly established that such actions may constitute retaliation. As discussed *infra*, Walsh's claim lies properly in Fourth Amendment excessive force jurisprudence. It

is a novel claim under First Amendment retaliation jurisprudence and thus, Plaintiffs cannot show that Benavides violated Walsh's "clearly established" constitutional rights. Defendants are entitled to qualified immunity as it pertains to Walsh's retaliation claim.

Finally, Plaintiffs contend that, Jones, acting as D. Savage's agent, gave paperwork to the officers showing that "D. Savage did in fact properly petition the government under the First Amendment to operate as they were." ECF No. 75, PageID.883. Plaintiffs say this activity is protected by the First Amendment and Defendants retaliated against D. Savage by destroying the building and leaving it unsecure after the search was completed. As Defendants point out, Plaintiffs did not point to any case law finding that officers who failed to secure a building after executing a search warrant or damaged the building while conducting their seizure of contraband were held liable for unconstitutional retaliation. Indeed, they cite no existing precedent in which an officer was held liable for a First Amendment retaliation claim emanating from a search and seizure executed pursuant to a warrant. Accordingly, D. Savage's purported constitutional rights were not clearly established on the date of the search and Defendants are entitled to qualified immunity on Count I.

## B. Count II: Excessive Force and Qualified Immunity

Plaintiffs say genuine issues of material fact remain regarding: (1) all Defendant Officers' alleged use of excessive force in pointing guns at all Plaintiffs, (2) Defendant Officer Anderson's alleged use of excessive force in slamming Plaintiff Williams against the wall while handcuffed; (3) Defendant Officer Benavides's alleged use of excessive force in slamming Plaintiff Walsh against the wall while handcuffed; (4) Defendant Officer Anderson's alleged use of excessive force in refusing to loosen Plaintiff Williams handcuffs that were too tight. [ECF No. 75, PageID.885]. The Court will discuss each argument in turn.

### 1. Plaintiffs' Gun-pointing Claims

First, Plaintiffs claim that officers used excessive force by pointing guns at them upon entry of the facility and during arrests. Plaintiffs' argument appears to imply that officers pointed guns at them during the entire search even after they were in handcuffs. Plaintiffs claim they were made to stand against the wall handcuffed for four to five hours. [ECF No. 75, PageID.891].  As Defendants point out, there is no testimony or other evidence supporting an inference that guns were pointed at Plaintiffs during the entire search. Plaintiffs say the gun pointing was unreasonable because none of the Plaintiffs were armed during the raid and there is no evidence in the record that suggests that the Defendants had any information prior to the raid suggesting that Plaintiffs would be armed or dangerous. [ECF No.

75, PageID.885]. Moreover, Plaintiffs aver that the evidence in the record could lead a reasonable jury to believe that none of the individual Plaintiffs ever posed any threat of harm to Defendants during the execution of the raid. [Id].

The use of excessive force in the execution of a search warrant constitutes a Fourth Amendment violation. *See Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir.2009). "To determine whether a constitutional violation based on excessive force has occurred, this Court applies the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight*." Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir.2010) (internal quotation marks omitted).

Plaintiffs rely on *Binay v. Bettendorf*. In that case, the Sixth Circuit held that officers were not entitled to qualified immunity because they were on notice that their detention of Plaintiffs during the valid search for narcotics would constitute a Fourth Amendment violation. *Id*. at 652. It also held that plaintiffs alleged sufficient facts to show that officers conduct violated the Fourth Amendment where they held plaintiffs at gunpoint for an hour after they were handcuffed, plaintiffs had no criminal record, they cooperated throughout the ordeal, posed no immediate threat to the officers, and did not resist arrest or attempt to flee. *Id*. at 650. Further adding to the court's reasoning, the officers did not anticipate the presence of weapons and officers continued to hold plaintiffs at gunpoint even

-16-

though no narcotics were found during search. *Id*. Unlike *Binay*, no evidence here shows that officers continued to point guns at plaintiffs long after they were handcuffed, and the officers here found contraband.

Defendants reply brief relies on *Marcilis v. Twp. Of Redford*. In that case, the Sixth Circuit stated: "our Circuit has made clear that officers conducting residential searches may detain individuals in handcuffs and display firearms where the officers have a justifiable fear of personal safety." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 599 (6th Cir. 2012) (citing *Ingram v. City of Columbus*, 185 F.3d 579, 591–92 (6th Cir.1999)).[1] It also held that the plaintiffs officers were entitled to qualified immunity where: (1) the police officers threw a plaintiff onto a couch, causing bruises; (2) the police officers threatened to hit plaintiff in the face with a gun; (3) the police officers pushed a plaintiffs "violently" to the floor despite the fact that he was visibly bandaged; (4) the police officers pointed guns at plaintiffs for thirty minutes; (5) the police officers handcuffed plaintiffs for ten minutes; and (6) the federal agents and police officers wore combat gear or masks. *Id*. at 599. The *Marcilis* Court held that the police officers could have reasonably believed that their conduct was a lawful means of exercising command of the situation, given the violence and frantic efforts to conceal or destroy evidence often

---

[1] The Court notes that, although Defendant cited *Marcilis* for the first time in their reply brief, Plaintiffs do not argue that Defendants' reliance on *Marcilis* is waived, and Plaintiffs made no attempt to move for leave to file supplemental briefing to address *Marcilis*.

associated with a drug raid. *Id*.  Distinguishing *Binay*, the *Marcilis* Court noted that the warrant at issue in *Marcilis* authorized the officers to search two homes for weapons and drugs, one plaintiff had previously pleaded guilty to assaulting a police officer, and there was no evidence that police improperly continued to detain the plaintiffs after the search was concluded and no narcotics were found. *Id*.

Here, Plaintiffs' circumstances are more analogous to *Marcilis* than *Binay*. It is undisputed that, when the officers entered the building, Plaintiff Curtis Williams ran down the hallway of the facility and slammed the door to the lab where Plaintiff James Frazier was working. A reasonable officer could construe these acts as attempted flight or attempts to conceal evidence. Plaintiff Frazier testified in a deposition that: the officers put him in handcuffs and then walked him down to where the other plaintiffs were located. [ECF No. 66-4, PageID.747]. Frazier also testified that, "they had us line up against the wall with our hands pretty much on our heads facing the wall and -- yeah, with guns on us." [Id]. Frazier's testimony indicates that officers had guns pointed at all the plaintiffs, but none of the exhibits or deposition pages attached to Plaintiffs' pleadings reference the amount of time officers had guns pointed at Plaintiffs or which officers continued to point guns at them after Plaintiffs had already been cuffed. The "nonmoving party must present significant probative evidence in support of its opposition to a motion for summary

judgment in order to defeat the motion." *Bates v. Provident Life & Acc. Ins. Co*., 596 F. Supp. 2d 1054 (E.D. Mich. 2009). Plaintiffs did not do so with respect to the gun pointing claims and the amount of time officers pointed guns at them after they were handcuffed.

However, even if sufficient evidence existed in the record pertaining to the amount of time Defendants pointed guns at Plaintiffs after they were handcuffed, Plaintiffs' gun pointing claim would not survive summary judgment. Viewing the facts in the light most favorable to Plaintiffs, their contention that all the officers participated in the gun pointing after Plaintiff were handcuffed is implausible. Some of the officers were conducting the search and seizing contraband, while other were dealing with Plaintiffs. Plaintiffs do not name the officers who allegedly pointed guns at them after they were arrested, and the record sheds no light on this question. As Defendants point out, "[i]t is a well-established principle of federal § 1983 law that '[e]ach defendant's liability must be assessed individually based on his own actions.'" *ABCDE Operating, LLC v. City of Detroit*, 254 F. Supp. 3d 931, 951 (E.D. Mich. 2017) (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) ("Even assuming an officer who participated in the warrantless entry might have pointed his or her weapon at [plaintiff], [p]laintiff's inability to say which officer might have done so forecloses the imposition of liability on any individual Defendant officer arising from this conduct."). As such, Plaintiffs inability to say

which officers pointed weapons at them after the arrests forecloses the imposition of liability on any individual officer for the gun pointing claims.

Finally, the Court rejects Plaintiff Jones's contention that the officers who pointed guns at her acted unreasonably because she had allegedly showed them paperwork authorizing Savage to operate as a grow facility. Law enforcement officers may rely on facially valid search warrants even in the face of vehement claims of innocence. *See Masters v. Crouch*, 872 F2d 1248, 1253 (6th Cir. 1989) (citing *Baker v. McCollan*, 443 U.S. 137, 145 (1979)); *see also Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) (internal quotations omitted) ("law enforcement is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause").

On Plaintiffs' excessive force claims for gun pointing that occurred before the arrest, Defendants are entitled to qualified immunity because "law enforcement officers conducting searches may detain individuals in handcuffs and display firearms where the officers have a justifiable fear of personal safety." *Marcilis*, 693 F.3d at 599. Finally, due to the absence of specific allegations against particular officers, no Defendant can be held individually liable on Plaintiffs' excessive force claim for gun pointing that occurred after the arrest.

Summary Judgment is **GRANTED** with respect to this the gun pointing claims. The Court will discuss the remaining excessive force claims below.

## 2. Excessive Force Standard

In assessing a claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "A court (judge or jury) cannot apply this standard mechanically." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Rather, the inquiry "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Those circumstances include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff 's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Lombardo v. City of St. Louis, Missouri*, 141 S. Ct. 2239, 2241 (2021) (internal citations omitted).

"[A] police officer's use of force against a suspect is justified by the threat posed by the suspect to the safety of the officer or others" *Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 405 (6th Cir. 2009). By contrast, "when a suspect has [] already been [sic] restrained, the officer's constitutional authority to use force is significantly more circumscribed. This constitutional line serves to

ensure that a police officer's authority to use legitimate force to detain does not cross into physical abuse of an incapacitated suspect." *Id*.

### 3. Plaintiffs Williams's and Walsh's Claims for Being Slammed Against the Wall

Plaintiffs Williams and Walsh both claim that, while they were handcuffed and compliant, they were slammed against the wall. The alleged perpetrators of these acts were Defendant Officer Anderson (against Williams) and Defendant Officer Benavides (against Walsh). Defendants do not dispute Plaintiff's allegations that these individuals were slammed against the wall face first while handcuffed and being compliant.

Defendants say the record does not indicate that Plaintiff Williams or Walsh suffered any physical injury from the contact alleged against Officers Anderson and Benavides and that their failure to show any physical injury should be dispositive of their excessive force claims. [ECF No. 78, PageID.999]. They rely on *Dorsey v. Barber*, 517 F.3d 389, 402 (6th Cir. 2008) (holding that an officer was entitled to qualified immunity on excessive force claim where officers held criminal suspect at gunpoint during a terry stop and no touching or physical injury resulted); and *Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009).

In *Morrison*, the Sixth Circuit rejected essentially the same qualified immunity argument related to *de minimis* injuries at issue here. It found that a

reasonable jury could conclude that plaintiff did not pose a threat to the officer and, in the absence of a threat to officer safety, the officer cannot argue that he acted reasonably under the Fourth Amendment when he pushed plaintiff's face into the ground while she was handcuffed and incapacitated. *Id*. It reasoned, the "use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." *Id*. The Court also held that, although the alleged excessive force only resulted in a "minor scratch not deep enough to bleed, this did not defeat her excessive force claim." *Id*. at 407. The Court reasoned, "while an excessive use of force claim may be established through evidence of severe injury or physical contact, this Circuit has not required that this must be the case." *Id*. (*Citing Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir.1999). Defendants point to no case that has since modified *Morrison's* holding.

Rather, the Sixth Circuit has held that a plaintiff may "allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Id*. (citing *Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir.1996) (upholding excessive force claim where plaintiff alleged that officers used excessive force in removing her wedding ring)). Under Sixth Circuit law, the "extent of the injury inflicted" is not "crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment"

as opposed to Eighth Amendment claims for cruel and unusual punishment. *Baskin v. Smith*, 50 F. App'x 731, 737 (6th Cir. 2002)

In *Pigram*, the defendant officer slapped the handcuffed plaintiff in the face because the plaintiff was being unruly and had a "smart-ass mouth." *Pigram ex rel. Pigram v. Chaudoin*, 199 Fed.Appx. 509, 513 (6th Cir.2006). Finding the defendant's conduct to be unreasonable under the Fourth Amendment for the purposes of summary judgment, *Pigram* emphasized that a "slap to the face of a handcuffed suspect—even a verbally unruly suspect—is not a reasonable means of achieving anything more than perhaps further antagonizing or humiliating the suspect." *Id*. The Court reached this conclusion notwithstanding the less-than-severe use of force applied and the absence of any resulting injury. *See Id*. (stating "under specific circumstances, a slap may constitute a sufficiently obvious constitutional violation" even if "involv [ing] less physical force than a 'tackle' ").

At the time Anderson and Benavides acted, every reasonable officer would have known, pursuant to *Morrison*, that using force against an arrestee who is already handcuffed is unreasonable in the absence of a threat to police. Unlike the gun pointing during the terry stop in *Dorsey*, here the force was physical, and it occurred after an individual was handcuffed, similar to *Morrison*. Williams's and Walsh's right to be free from excessive force under these circumstances was clearly established at the time of the search in 2018.

Viewing the facts in the light most favorable to Williams and Walsh, a reasonable jury could conclude that it was unreasonable to slam them against the wall while unarmed, handcuffed, and compliant. And a jury could conclude that the security problem and threats associated with narcotics and weapons searches (i.e., violence and destruction of evidence), with respect to Williams and Walsh, had been nullified by placing them in handcuffs with other officers watching them.

Plaintiff Williams testified that he suffered a "bruised chin and a lot of mental injuries." [ECF No. 66-9, PageID.796]. Plaintiff Walsh testified that she experienced "fear" as a result of being slammed into the wall but no physical injuries. [ECF No. 66-8, PageID.787]. Neither sought medical treatment. Similar to the injuries in *Morrison* and *Pigram*, Plaintiffs' minimal injuries, or the absence of injuries all together, it not fatal to Plaintiffs' Fourth Amendment claim for excessive force. The Court will not grant summary judgment on the portion of count II that pertains to Williams's and Walsh's excessive force claims against Defendants Anderson and Benavides for being slammed into a wall while handcuffed. Also, Defendants Anderson and Benavides are not entitled to qualified immunity on this claim.

**4.  Defendant Officer Anderson's alleged use of excessive force in refusing to loosen Plaintiff Williams handcuffs that were too tight.**

The Sixth Circuit has stated a test for whether excessive force was used during handcuffing. "In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Morrison v. Bd. Of Trustees Of Green Twp*., 583 F.3d 394, 401 (6th Cir. 2009).

Although several Plaintiffs claim that their handcuffs were too tight, only Plaintiff Williams testified that he complained to Defendant officer Anderson about the handcuffs being too tight and was ignored. This satisfies the first two prongs of the *Morrison* test. Defendants argue that Plaintiff Williams was not injured. However, the Court in *Morrison* ruled that "…skin marks, and attendant pain…creates a genuine issue of material fact regarding the existence of an injury." *Morrison*, 583 F.3d at 403. Plaintiff Williams testified that he was "commenting on how tight the handcuffs were and they were cutting off the circulation in [his] wrists . . ." [ECF No. 66-9, PageID.796].  He also testified that he experienced pain, soreness, and welts on his wrists, although he experienced no permanent injury. [Id].

-26-

There is no meaningful distinction between the pain, soreness, welts, and loss of circulation experienced by Williams, and the skin marks and pain at issue in *Morrison*. *Morrison* was not the first or last time that appellate courts, including the Sixth Circuit, and courts in this district, indicated that bruising could support an excessive use of force claim based on handcuffing. *See Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002). *Burchett* specifically considered summary judgment of the plaintiff's allegations that his hands were "swollen and blue" while he was handcuffed. *Id*. at 941. Although ultimately granting qualified immunity to the defendant officer because he immediately removed the handcuffs once the plaintiff complained of tightness, the Court emphasized that,

> applying handcuffs so tightly that the detainee's hands become numb and turn blue certainly raises concerns of excessive force. Our precedents allow the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight.

*Id*. at 944–45 (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir.2001), and *Martin v. Heideman*, 106 F.3d 1308, 1310-1313 (6th Cir. 1997)). The Court agrees and finds that the allegations of bruising and wrist marks create a genuine issue of material fact with regard to the injury prong of the *Morrison* test. *See also Grooms v. Dockter*, No. 95–1261, 1996 WL 26917, 76 F.3d 378, at *1–2 (6th Cir. Jan.23, 1996) (Table) (per curiam) (affirming denial of summary judgment to defendant police officers because they left a suspect handcuffed too tightly for 30

minutes, resulting in serious damage to his hands and wrists, including swelling and bruising); *Meredith v. Erath*, 342 F.3d 1057, 1060–61 (9th Cir.2003) (permitting unduly tight handcuffing claim to survive summary judgment based on allegations of bruising alone); *Bolan v. City of Keego Harbor*, No. Civ. 01–74467, 2002 WL 31545997, at *4 (E.D. Mich. Oct.24, 2002) (finding allegations that handcuffs applied "so tight as to bruise [plaintiff's] wrists" permitted claim for excessive force to survive summary judgment).

More recently, in *Hughey v. Easlick*, the Sixth Circuit overturned the district court's grant of summary judgment based on insufficient injury where a plaintiff's handcuffs were too tight, her requests to the officer to loosen them were ignored, and she experience only bruising as a result. The Court noted,

> [w]e conclude that Hughey's deposition testimony creates a genuine dispute of material fact about injury—namely, that the handcuffs caused her pain and were tight enough to leave lingering ring marks that caught the attention of a medical professional . . . We respectfully disagree with the district court's decision that Hughey 'cannot show a constitutional violation on her wrist-marks claim.'

*Hughey v. Easlick*, 3 F.4th 283, 290 (6th Cir. 2021). "The right to be free from excessively forceful handcuffing is a clearly established right for qualified immunity purposes." *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002). And the Court finds that, in 2018, it was clearly established as a matter of law that excessively tight handcuffs which cause bruising on a plaintiff's wrists may

constitute sufficient injury to allow a handcuffing claim to survive summary judgment.

Defendants argue that Williams's Fourth Amendment rights to be free from excessively tight handcuffing were not clearly established here because, "while the Sixth Circuit has adopted the *Morrison* test, other circuits require a greater showing than minimal injuries to advance past summary judgment on handcuffing claims." [ECF No. 66, PageID.720]. Defendants also say that there is disagreement in Sixth Circuit and cases declining to identify the violation of a clearly established right based on painful handcuffing without a more severe injury. [Id].

They cite *Fettes v. Hendershot*, 375 F. App'x 528, 533-34 (6th Cir. 2010). In the unpublished Sixth Circuit decision, the Court found:

> Our precedents fail to notify officers that any response to a complaint of tight handcuffing other than an immediate one constitutes excessive force. Indeed, a constitutional requirement obligating officers to stop and investigate each and every utterance of discomfort and make a new judgment as to whether the handcuffs are "too tight" is neither reasonable nor clearly established. Here, the short duration of the trip, adherence to police handcuff protocol, and absence of any egregious, abusive, or malicious conduct supports the reasonableness of the officers' conduct. Moreover, unlike other cases in which we have denied qualified immunity, the officers here acted without malice and with reason—they declined to loosen the handcuffs in light of the short, ten-minute transport to the police station. *Cf. Morrison*, 583 F.3d at 402–03.

Defendants also cite *O'Malley v. City of Flint*, 652 F.3d 662 (6th Cir. 2011) ("While O'Malley claims that he told Officer Hagler that his handcuffs were too

tight, O'Malley did not ask Hagler to loosen the handcuffs. Furthermore, *O'Malley* did not have an obvious physical injury and was handcuffed for only about two minutes before Officer Johnson arrived and escorted him to her vehicle. At that point, Hagler had no more contact with O'Malley"). Defendants cite *Lee v. City of Norwalk, Ohio*, as well. In that case the court held that no reasonable officer would have known that ignoring plaintiff's complaints during the *short* drive to the police station was unlawful. *Lee v. City of Norwalk, Ohio*, 529 F. App'x 778, 782 (6th Cir. 2013) (emphasis added).

As a point of clarification, because *Morrison* is binding precedent that is factually on point, the Court need not look to the law of other circuits or to other persuasive authority in the Sixth Circuit. See *Hearring v. Sliwowski,* 712 F.3d 275, 280 (6th Cir. 2013) *(*quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (Noting that "In inquiring whether a constitutional right is clearly established, [courts in the Sixth Circuit] look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit,] then to other courts within our circuit, and finally to decisions of other circuits.") (Internal quotations omitted). Defendants also argue that the "Supreme Court has suggested that even a 'robust consensus' among the courts of appeal might be insufficient to "clearly establish" that a constitutional violation has occurred." ECF No. 66, PageID.721 (citing *Taylor v. Barkes*, 575 U.S. 822, 826, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d

78 (2015). Defendants misapprehend *Taylor's* holding, which stated that, "to the extent that a robust consensus of cases of *persuasive authority* in the Courts of Appeals could itself clearly establish the federal right respondent alleges, . . . the weight of that authority at the time of Barkes's death suggested that such a right did not exist." *Taylor*, 575 U.S. at 826 (internal quotation marks omitted and emphasis added).

Defendants cite no authority showing that there must be a "robust consensus" of *binding precedent* to clearly establish a constitutional right. Rather, as the applicable authority demonstrates, such a consensus of persuasive authority is required to clearly establish a right when binding precedent does not resolve the "clearly established" inquiry. *See Hall v. Sweet*, 666 F. App'x 469, 481 (6th Cir. 2016) (Noting that, in the absence of precedent, nonbinding authority may be persuasive in showing there is "a clearly established right—perhaps by exposing a trend in non-precedential case law—but it is not controlling on its own.").

Here, *Morrison* is directly applicable, unlike the cases Defendants cite to argue that Williams's rights were not clearly established at the time of the alleged violation. In *Morrison*, the officer handcuffed the plaintiff too tightly, did not loosen the handcuffs when asked to do so, told the plaintiff that he could place the handcuffs on "as tight as he wanted to and that's how they were staying," and kept the plaintiff handcuffed for forty to fifty minutes. *Id*. at 402.

According to Williams's testimony, he told Anderson that the handcuffs were too tight, and asked Anderson to loosen them. Anderson responded: "Shut the fuck up. Don't say shit unless you're spoken to . . . Turn the fuck around. Don't be fucking looking back here at us. Face the fucking wall." [ECF No. 66-9, PageID.796]. Further, Williams testified that he and his co-Plaintiffs were handcuffed for "hours." [ECF No. 66-9, PageID.798]. Given the abusive language, the long period of time during which Williams was cuffed, and the failure of Anderson to offer any explanation for why he ignored Williams's request, *Morrison* is analogous, and *Fettis*, *O'Malley*, and *Lee* are distinguishable.

It is clearly established, and any reasonable officer under Anderson's circumstances would have known in 2018 that an officer violates the Fourth Amendment when he—without reason and for an extended period of time— ignores an arrestee who tells him that the handcuffs are too tight, requests for them to be loosened, and experiences bruising as a result. It may not be clearly established that an officer violates the constitution by ignoring such a request with reason or for a short period of time, but that is not what happened here. Accordingly, as it pertains to Williams's handcuffing claim against Anderson, Anderson is not entitled to qualified immunity and a genuine issue of material fact exists for trial. The Court will deny Defendants' motion for summary judgment with respect to Williams's handcuffing claim against Anderson.

-32-

## V. Conclusion

For the reasons set forth above, **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED IN WHOLE** with respect to Count I. The motion is **GRANTED IN PART AND DENIED IN PART** with respect to count II.

On count II, **IT IS FURTHER ORDERED** that:

1. The motion is **GRANTED** with respect to all of Plaintiffs' gun pointing claims.

2. The motion is **DENIED** with respect to Williams and Walsh's excessive force claims against Defendant Officers Anderson and Benavides for allegedly slamming them against the wall while handcuffed.

3. The motion is **DENIED** with respect to Plaintiff Williams excessive force claim for tight handcuffing against Anderson.

4. The motion is **GRANTED** with respect to all Plaintiffs who allege handcuffing claims, expect Plaintiff Williams.

Only Plaintiffs Williams and Walsh will proceed to trial on count II against Defendant Officer Anderson and Benavides. The Court will address Count IV in a forth coming Opinion and Order.

The dates for trial, motions *in limine*, the final pretrial order, and the final pretrial conference remain in effect, as stated in the text of the document entitled "Amended Scheduling Order" docketed at ECF No. 94.

**IT IS SO ORDERED.**

Dated:  September 27, 2023          /s/ Gershwin A. Drain
                                    GERSHWIN A. DRAIN
                                    UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 27, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager